# DEFENDANT'S INITIAL EXPERT REPORT

*Gary Marks, et al. v. Steven L. Story, et al.*
CV. NO. 08-00205 JMS-BMK

**Prepared on Behalf of Steven L. Story, Steve Story & Associates, Inc., and United Planners' Financial Services of America**

*Prepared for*

**Mr. Ryan H. Engle, Esq.**
*BAYS DEAVER LUNG ROSE & HOLMA*
**16th Floor, Ali'i Place**
**1099 Alakea Street**
**Honolulu, Hawai'i 96813**

*Prepared by*

**Mary Rae Fouts, EA, CFP®**

*FOUTS FINANCIAL GROUP*
1547 Palos Verdes Mall #407
Walnut Creek, California 94597
(925) 979-9972
mary@foutsfinancialgroup.com

*November 20, 2009*

# EXHIBIT A

# TABLE OF CONTENTS

**Section 1: Executive Summary** …..……………………………..……………… **- 3 -**

**Section 2: Opinions to be Expressed and Reasons Therefor** ………..…………. **- 3 -**

**Section 3: Data Considered in Forming Opinions** …………...……….………… **- 16 -**

**Section 4: Exhibits to be Used** ..…………………….……………..….………...... **- 18 -**

**Section 5: Expert Qualifications, Including List of Publications Authored**
**Within Preceding Ten Years** ..……………………………………….…………...... **- 18 -**

**Section 6: Compensation to be Paid For Study and Testimony in This Matter** …… **- 19 -**

**Section 7: Other Cases In Which Witness Has Testified As an Expert**
**At Trial Or Deposition Within the Preceding Four Years** …………………….….... **- 19 -**

*Curriculum Vitae* ……………………………….………...……………………… **- Exhibit 1 -**

# SECTION 1:  EXECUTIVE SUMMARY

The matter of  *Gary Marks, et al. v. Steven L. Story, et al.* is pending in the United States District Court, District of Hawaii.  I have been retained by the law firm of  Bays Deaver Lung Rose & Holma to evaluate this matter on behalf of defendants  Steven L. Story (hereafter "Mr. Story"), Steve Story & Associates, Inc. (hereafter "Story and Associates"), and United Planners' Financial Services of America (hereafter "United Planners").

# SECTION 2:  OPINIONS TO BE EXPRESSED AND REASONS THEREFOR

## Opinion Topic #1:  Sales Practices and the Roles of Mr. Story, Story and Associates, and United Planners

Based on the materials I have reviewed, I will testify to my expert opinion of the  market conduct and sales practices exhibited by Mr. Story, Story and Associates, and United Planners in the marketing, policy delivery, and customer service for the John Hancock and Lincoln National life insurance policies at issue in this matter.  These policies are:

> (1) Policy number 46 016 739, John Hancock Life Insurance Company Flexible Premium Variable Life Insurance Policy, insuring the life of Gary Marks. This policy was issued on February 15, 2006, providing a death benefit of $6,880,000.00.  The premium mode at issue was annual, with a planned annual premium of $200,000.00 for ten years.  Alternative premium options included a minimum initial premium of $6,365.46, and a no-lapse guarantee annual premium of $76,385.48.  This policy is no longer in force, having been canceled and surrendered by Gary Marks.

> (2) Policy number 57 654 261, John Hancock Life Insurance Company Flexible Premium Variable Life Insurance Policy, insuring the life of Gary Marks.

This policy was issued on March 8, 2006, providing a death benefit of $6,880,000.00. The premium mode at issue was annual, with a planned annual premium of $200,000.00 for ten years. Alternative premium options included a minimum initial premium of $8,101.62, and a no-lapse guarantee annual premium of $97,219.39. This policy is no longer in force, having been canceled and surrendered by Gary Marks.

(3) Policy number 4853604, The Lincoln National Life Insurance Company Flexible Premium Variable Life Insurance Policy, insuring the life of Theresa Marks. This policy was issued on December 9, 2006 providing a death benefit of $7,240,000.00. The premium mode at issue was annual, with a planned annual premium of $100,000.00. Alternative premium options included a twenty year no-lapse premium of $2,184.06 per month, and a ten year no-lapse premium of $1,478.16 per month. This policy is currently in force. As of October 28, 2009, the policy provided for a death benefit of $7,240,000.00, and a gross cash value of $83,800.87.

Market conduct and sales practices for life insurance agents, securities broker dealers, and securities registered representatives involves compliance with rules and regulations promulgated by the Financial Industry Regulatory Authority, Inc. (hereafter "FINRA"), insurance regulations effective in the state in which the life insurance agent conducts insurance business, and market conduct and sales practice standards based on industry standards. Based on the materials I have reviewed, I will testify to my opinion that conduct and sales practices demonstrated by Mr. Story, Story and Associates, and United Planners complied with FINRA rules and regulations, Hawaii insurance regulations (including Hawaii Code Section 480-2), and industry standards. While some of Mr. Story's email communications with Gary Marks were not retained, the deletion of these communications appears to have been the result of actions taken by AOL, Mr. Story's email provider. Mr. Story made a good faith effort to recover the deleted email communications, but was unsuccessful.

More specifically, I will testify to my opinion that Mr. Story, Story and Associates, and United Planners fulfilled the duties required in the roles of a life insurance agent, a securities registered representative, and a supervising broker dealer in the transactions at issue in this matter. As an insurance agent and registered representative, Mr. Story performed the role of selling the life insurance policies on the lives of Gary Marks and Theresa Marks. Mr. Story, and Story and Associates, are not licensed to provide accounting, tax, or legal advice. Neither Mr. Story nor Story and Associates provided accounting, tax, or legal advice in connection therewith. Accounting, tax, and legal advice pertaining to the transactions at issue in this matter was provided to the Plaintiffs by those individuals and companies performing the roles and duties as the Plaintiffs' accountant, tax preparer, and attorneys, which including Certified Public Accountant Deborah Daniells and numerous law firms.

United Planners performed the role of Mr. Story's supervising broker dealer for the sale of the life insurance policies on the lives of Gary Marks and Theresa Marks. United Planners is not licensed to provide accounting, tax, or legal advice. United Planners did not provide accounting, tax, or legal advice in connection therewith. Accounting, tax, and legal advice pertaining to the transactions at issue in this matter was provided to the Plaintiffs by those individuals and companies performing the roles and duties as the Plaintiffs' accountant, tax preparer, and attorneys, including Certified Public Accountant Deborah Daniells and numerous law firms.

More specifically, United Planners complied with FINRA rules and industry standards in its supervision of Mr. Story, including the performance of annual compliance audits. Moreover, United Planners' current compliance manual, which is an historical compilation of compliance rules and procedures, shows United Planners complies with FINRA rules and industry standards.

In addition, based on the materials I have reviewed, I will opine that Mr. Story, Story and Associates, and United Planners, while fulfilling their individual roles and duties as a life insurance agent, securities registered representative, and supervising broker dealer, were not parties to the Single Employer Welfare Benefit Plans as adopted by the Plaintiffs, except as the

life insurance agent, registered representative, and supervising broker dealer for the life insurance policies on the lives of the insureds. More specifically, Mr. Story, Story and Associates, and United Planners did not (1) provide tax or legal advice regarding the Welfare Benefit Plans, (2) make guarantees regarding the Internal Revenue Service's interpretation of the Welfare Benefit Plans, (3) act as the administrator for the Welfare Benefit Plans, or (4) act as the trustee of the Welfare Benefit Plans.

In addition, I will testify to my opinion that the product illustrations pertaining to the life insurance policies; applications and disclosure forms pertaining to the policies; and paperwork and disclosure forms pertaining to the Welfare Benefit Plans complied with applicable regulations and industry standards at the time of the transactions at issue in this matter.

Regarding Plaintiffs' allegations that they thought they were purchasing variable annuity contracts, rather than variable life insurance policies, my review of the discovery information does not support this allegation. The product illustrations, life insurance applications, life insurance disclosure forms, and life insurance policies clearly identify the products as life insurance policies. The Plaintiffs were also required to undergo extensive underwriting requirements prior to approval and issue of the life insurance policies, including medical exams, blood work, urine specimens, and insurance company inspection reports. These underwriting requirements are specific to life insurance, and are not required for annuity contracts. Lastly, Plaintiffs' own Complaint shows that the presence of life insurance was prominently disclosed to the Plaintiffs, as shown by the Complaint Exhibit A that boldly identifies the Single Employer Welfare Benefit Plan as a "Insured Security *Life Insurance* Program".

## Opinion Topic #2: The John Hancock Life Insurance Policies, the Lincoln National Life Insurance Policy, and the Single Employer Welfare Benefit Plans

The purpose of the John Hancock and Lincoln National life insurance policies was to provide life insurance coverage on the lives of Gary Marks and Theresa Marks; with the life insurance death benefit paid to the policy beneficiary upon the death of each insured. Based on the

materials I have reviewed, I will testify to my opinion that the John Hancock policies performed in accordance with the design of the policies before the policies were canceled and surrendered by Mr. Marks. Moreover, I will testify to my opinion that the Lincoln National policy continues to perform in accordance with the design of the policy. If Theresa Marks were to die today, the Lincoln National policy's $7,240,000.00 death benefit would be paid to the life insurance policy beneficiary.

In addition, I will testify to my expert opinion that at the time the Single Employer Welfare Benefit Plans were adopted, and at the life insurance policies were issued in 2006, life insurance policies, including the John Hancock and Lincoln National policies, were used as an acceptable asset in Single Employer Welfare Benefit Plans.

I will also testify to my expert opinion that the John Hancock and Lincoln National life insurance policies were suitable life insurance policies for Gary Marks and Theresa Marks at the time the policies were issued, considering suitability factors including the Plaintiffs' net worth and annual income. Gary Marks is a sophisticated investor; he is a hedge fund manager and published author of a book titled *Rocking Wall St.*, which covers various financial planning, investment, and tax topics. The suitability of the life insurance policies was also affirmed by the Plaintiffs' lawyer Christine P. Brown at the law firm of Garvey Schubert Barer. In a letter dated September 26, 2007, Ms. Brown recommended retention of the life insurance policies.

Based on the materials I have reviewed, I will testify to my opinion that the policies complied with state regulatory requirements, FINRA regulatory requirements, and industry standards. More specifically, the policies met these regulatory requirements and industry standards in the areas of life insurance policy design, content, and disclosures; and the design of life insurance illustrations.

Regarding the Single Employer Welfare Benefit Plans at issue in this matter, more specifically named the Insured Security Program Welfare Benefit Plans, I will testify to my expert opinion that the plans were acceptable plans regarding ERISA and tax regulations at the

time the Plaintiffs elected to adopt the plans, and at the time the life insurance policies were issued in 2006. In fact, the Plaintiffs have not received an adverse tax determination from the Internal Revenue Service regarding their establishment of the Single Employer Welfare Benefit Plans, or contributions into such plans. In addition, I will opine that the Insured Security Program Welfare Benefit Plans were suitable plans for the Plaintiffs when the Plaintiffs elected to adopt the plans, and at the time the life insurance policies were issued in 2006. Plan suitability is supported by discovery information, including the Plaintiffs' net worth, annual income, desire for tax savings, financial goals, and so forth.

### Opinion Topic #3: Plaintiffs' Allegations of Violation of Rule 10-B-10 of the Securities Exchange Act of 1934, and The Agent Relationship Between Defendants and the Plaintiffs

I will testify to my expert opinion regarding the agent relationship, if any, that existed between the Defendants and the Plaintiffs. More specifically, I will testify to my expert opinion that an agent relationship did *not* exist between Defendants and the Plaintiffs.

In addition, I will testify to my opinion that an agent relationship did exist between (1) Mr. Story and John Hancock Life Insurance Company, and (2) Mr. Story and Lincoln National Life Insurance Company. In the life insurance industry, a licensed insurance agent must become appointed with an insurance company in order to sell the company's insurance policies and annuity contracts. This insurance agent appointment process is completed for each line of insurance on a state-by-state basis, and creates the agent relationship between the insurance company and the insurance agent. If the appointment process is not completed, an agent relationship between an insurance agent and insurance company does not exist. Moreover, an individual or entity must first be licensed as an insurance agent before the appointment process can be completed. Mr. Story was a duly appointed life insurance agent in the state of Hawaii for John Hancock Life Insurance Company and Lincoln National Life Insurance Company during the time of the life insurance transactions at issue in this matter.

In addition, as a registered representative of United Planners, Mr. Story was also an agent for United Planners. Mr. Story maintained securities registration in the state of Hawaii for United Planners during the time of the life insurance transactions at issue in this matter.

Moreover, I will testify to my expert opinion that Rule10-B-10 was not violated by the Defendants. As the Defendants were not acting as agents for Plaintiffs during transactions at issue in this matter, disclosure of commission information prior to the sale of the life insurance policies was not required. In addition, there is no evidence to support allegations that the Plaintiffs would not have purchased the life insurance policies had they known the dollar amount of commissions earned by Mr. Story and United Planners prior to the purchase of the life insurance policies.

**Opinion Topic #4: Plaintiffs' Allegations of Fraud, Deceit, and Violation of Rule 10-B-5 of the Securities Exchange Act of 1934**

I will testify to my expert opinion regarding Plaintiffs' allegations of fraud, deceit, and violation of Rule 10-B-5 of the Securities and Exchange Act of 1934. I will opine that Mr. Story, Story and Associates, and United Planners did not engage in fraud and deceit, and that they did not violate Rule 10-B-5, regarding the transactions at issue in this matter. Upon considering all of the discovery information, the discovery information clearly shows that the Plaintiffs received accurate and complete information regarding the transactions at issue in this matter. As previously stated in this report, I will also testify to my opinion that the Welfare Benefit Plans, the John Hancock life insurance policies, and the Lincoln National life insurance policy were suitable for the Plaintiffs.

**Opinion Topic #5: Plaintiffs' Allegation of Breach of Fiduciary Duty by Mr. Story**

I will testify to my expert opinion regarding Plaintiffs' allegation of breach of fiduciary duty by Mr. Story. I will opine that a breach of fiduciary duty did not occur, because a fiduciary relationship did not exist between Mr. Story and the Plaintiffs during the transactions at issue in

this matter. More specifically, Mr. Story performed the roles and duties of a life insurance agent and a securities registered representative for the life insurance transactions at issue in this matter; he did not undertake duties or responsibilities involving a fiduciary capacity.

### Opinion Topic #6: Plaintiffs' Unjust Enrichment Allegation

I will testify to my expert opinion regarding Plaintiffs' allegation that Mr. Story and his associates were unjustly enriched as a result of the life insurance transactions at issue in this matter. More specifically, I will opine that Mr. Story and United Planners were not unjustly enriched by commissions earned from the sale of the life insurance policies. The commission rate of approximately 30% of the premiums paid into the life insurance policies was an industry standard commission rate in the 2005 through 2006 timeframe. In fact, much higher commission rates of up to 65% were available in the insurance industry on policies that Mr. Story could have sold to the Plaintiffs. The commission compensation earned by Mr. Story and United Planners was reasonable, based on the industry standard commission rates and the amount of premiums paid into the life insurance policies. In addition, there is no evidence to support allegations that the Plaintiffs would not have purchased the life insurance policies had they known the dollar amount of commissions earned by Mr. Story and United Planners prior to the purchase of the life insurance policies.

### Opinion Topic #7: Plaintiffs' Damage Claims

I will testify to my expert opinion of damages allegedly incurred by the Plaintiffs as a result of the establishment of the Single Employer Welfare Benefit Plans and the purchase of the John Hancock and Lincoln National life insurance policies. More specifically, I do not agree with the Plaintiffs' claim of damages for premiums of approximately $900,000 paid into the John Hancock and Lincoln National life insurance policies held in the Single Employer Welfare Benefit Plans. The premium payments made to the policies represent the amount of premium money agreed upon by John Hancock, Lincoln National, the insureds, and the policy owners, as specified in the policies. The life insurance companies agreed to provide life insurance coverage

in accordance with the terms of the policies, provided that sufficient premiums were paid by the policy owner.

Regarding the John Hancock policies, any loss of insurance coverage and subsequent occurrence of surrender charges is due to the Plaintiffs' own actions of cancellation and surrender of these two life insurance policies. Regarding the Lincoln National policy, the policy remains in force, providing a death benefit of $7,240,000.00, and a gross cash value of $83,800.87 as of October 28, 2009. In addition, the Plaintiffs have not received an adverse tax determination from the Internal Revenue Service regarding their establishment of the Single Employer Welfare Benefit Plans, or contributions into such plans.

## Opinion Topic #8: The Report of Plaintiff Expert Scott J. Witt, FSA, MAAA

I have reviewed the October 7, 2009 report of Mr. Witt. This report is generally a compilation of a number of hypothetical calculations performed by Mr. Witt in order to refute information provided by Mr. Story to Mr. Marks in an email dated January 23, 2006. I cannot support Mr. Witt's broad allegations of factual errors and understated costs included in the report, given that Mr. Witt uses different information in his hypothetical calculations than used by Mr. Story in his January 23, 2006 email to Mr. Marks.

The calculations discussed in Mr. Story's email are based on a set of factors derived from ongoing discussions with Mr. Marks. These factors included a 42% tax rate, a 58% tax rate, a 4% rate of return for the life insurance policies, a 7% Sky Bell Hedge Fund rate of return, and insurance policy values based on *Policy Values* obtained from the John Hancock VUL Accumulator life insurance illustration.

Unfortunately, the calculations discussed in Mr. Witt's report are based on a different set of factors. Mr. Witt only assumes a 42% tax rate, and fails to consider a 58% tax rate. In addition, Mr. Witt's analysis focuses on *Net Surrender Values* obtained from the John Hancock VUL Accumulator life insurance illustrations. The Net Surrender Values are lower, at times

significantly, than the Policy Values during the first nine policy years. The significant differences in the basis of Mr. Witt's analysis make for an inaccurate and unsupported comparison to Mr. Story's January 23, 2006 email. Moreover, both Mr. Story's email and Mr. Witt's report are based on hypothetical calculations only, with no guarantee that the calculations will hold true in the future.

In addition, Mr. Witt's analysis focuses on information provided in one email communication, disregarding the additional volumes of email communication, life insurance illustrations, and disclosure forms presented in the discovery information. Had Mr. Witt reviewed and considered the additional discovery information, he would have discovered the detail of information that was disclosed to the Plaintiffs by Mr. Story, including the policy surrender costs, policy charges, the possibility of tax regulatory changes, and so forth.

### Opinion Topic #9: The Report of Plaintiff Expert Stephen C. Burgess

I have reviewed the October 7, 2009 report of Mr. Burgess, and cannot support the conclusions and opinions reached in the report.

First, I question the ability of Mr. Burgess to prepare a complete report without first examining all relevant and available discovery information. Glaringly absent from the materials reviewed by Mr. Burgess is the deposition and exhibits from the September 17, 2009 deposition of Plaintiff Gary Marks. This deposition and exhibits contain many critical pieces of information otherwise unknown to Mr. Burgess. In my expert opinion, preparation of a complete and accurate Rule 26 Expert Report would be impossible without considering this deposition and exhibits.

My general disagreement with the opinions set forth in Mr. Burgess' "Opinion" section has been discussed in my opinion sections previously included in this report. However, regarding Mr Burgess' specific "Additional discussion" opinions, my comments are as follows:

<u>Discussion Point 1: Violation of FINRA Rule 2210-2 [*sic*]</u>[1]. I do not agree with Mr. Burgess' assertions that Mr. Story violated Rule 2210. As demonstrated in the volume of discovery information for this matter, Mr. Story accurately and completely disclosed information about the life insurance policies through his proper use of life insurance policy illustrations, life insurance disclosure forms, proper delivery of a current life insurance prospectus, and proper delivery of the life insurance policies. Furthermore, the life insurance illustrations were run at a very conservative rate of 4%. In my expert opinion, Mr. Story's statement that the " … variable market could and should average higher than 4%" would not be a violation of FINRA rules, given the long term outlook for the life insurance policies in question, the long term historical market returns, and the absence of a guarantee from Mr. Story that the returns in question are guaranteed to exceed 4%.

<u>Discussion Point 2: Violation of FINRA Rule 2210 [*sic*]</u>[2]. As discussed earlier in this report, I do not agree with Mr. Burgess' opinions that Mr. Story provided false, unbalanced, and misleading communication to Gary Marks and Theresa Marks. On the contrary, the discovery clearly shows that Mr. Story provided complete and accurate information about the life insurance policies issued by John Hancock and Lincoln National.

Moreover, Mr. Burgess' singular focus on one email communication is not how NASD Rule 2210-2 is applied. The rule is applied in consideration of the complete scope of communication with the public, which Mr. Burgess fails to do in his analysis.

<u>Discussion Point 3: Violation of FINRA Rule 2310 [*sic*]</u>[3] <u>and 96-86</u>. As discussed earlier in this report, I do not agree with Mr. Burgess' opinions that the John Hancock and Lincoln National life insurance policies were unsuitable for Gary Marks and Theresa Marks. Furthermore, Mr. Story consistently demonstrated concern for the well being of Gary Marks and Theresa Marks, as demonstrated by the ongoing efforts made by Mr. Story to obtain the comparative financial calculations requested by the Plaintiffs.

---

[1] The correct name of this rule is NASD Rule 2210.
[2] The correct name of this rule is NASD Rule 2210-2.
[3] The correct name of this rule is NASD Rule 2310.

<u>Discussion Point 4: Violation of FINRA Rule 2310.2 [*sic*]</u>[4]. I do not agree with Mr. Burgess' opinion that Mr Story violated this rule. The discovery information clearly shows that Mr. Story consistently demonstrated concern for the well being of Gary Marks and Theresa Marks, as demonstrated by the ongoing efforts made by Mr. Story to obtain the comparative financial calculations requested by the Plaintiffs. In addition, the discovery shows that Mr. Story's conduct met the industry standard of care; he provided industry-compliant product illustrations, product prospectuses, and product disclosures; and maintained ongoing communication with the Plaintiffs.

In addition, I do not agree with Mr. Burgess' assertion that the Plaintiffs were induced into the sale of the life insurance products as a result of discussions about commissions. As indicated in the discovery information, discussions about commissions occurred "after the implementation of the program"[5], so there could not have been an inducement of sale. Mr. Story testified in his September 16, 2009 deposition that he verbally informed Gary Marks that the commission rate was three percent, because he mistakenly thought that the amount of commissions earned on the sale of the products was three percent.[6] However, the error was corrected in an email from United Planners to Gary Marks on July 21, 2007, in which Gary Marks is provided with the exact amount of commissions earned on the John Hancock life insurance policies.[7]

<u>Discussion Point 5: Violation of Rule 2210b</u>. I do to not agree with Mr. Burgess' opinion that Mr. Story broke this rule by failing to submit sales materials to United Planners for approval. The discovery shows that the life insurance illustrations were the sales materials for the sale of the life insurance products through United Planners. This illustration system would have been previously approved by United Planners through United Planners' selling agreement with John Hancock Life Insurance Company.

---

[4] The correct name of this rule is NASD Rule 2310.2.
[5] September 16, 2009 Deposition of Steven Story, page 60, line 6.
[6] September 16, 2009 Deposition of Steven Story, page 60.
[7] September 16, 2009 Deposition of Steven Story, Exhibit 8.

Regarding other materials used, such as materials about the Insured Security Life Insurance Program, these materials were prepared by other independent parties and were not used to market or sell securities through United Planners. Approval of such materials by United Planners would not be required.

Discussion Points 6 and 7: United Planners failed to adequately supervise Mr. Story and monitor correspondence. I do not agree with this assertion. The discovery information shows that United Planners adequately monitored Mr. Story, including the performance of annual compliance audits. In addition, United Planners' Compliance Manual includes industry standard procedures for monitoring correspondence and record retention. While some of Mr. Story's email communications with Gary Marks were not retained, the deletion of these communications appears to have been the result of actions taken by AOL, Mr. Story's email provider. Mr. Story made a good faith effort to recover the deleted email communications, but was unsuccessful.

Discussion Point 8: Mr. Story gave unqualified tax advice. I do not agree with this assertion. The discovery information clearly shows that the Plaintiffs relied on their Certified Public Accountant Deborah Daniells for tax advice. In addition, general discussion of pre-tax and after-tax investment returns is common in discussions between a registered representative and the client. Such discussions do not represent unqualified tax advice.

**Opinion Topic #10: Additional Opinions that May Be Forthcoming**

My investigation and study are continuing. I reserve the right to review such additional evidence, information, and testimony as may be necessary and appropriate; and to offer additional opinions not specifically provided in this report, as necessary and appropriate for full consideration of the issues presented. I reserve the right to supplement this report accordingly.

## SECTION 3:  DATA CONSIDERED IN FORMING OPINIONS

In forming my opinions, I have relied upon my twenty-one years of extensive experience in the financial services industry, including experience as a life insurance agent, a licensed life and disability insurance analyst, a fire-casualty insurance broker, a CERTIFIED FINANCIAL PLANNER™ practitioner, an enrolled agent, and a securities registered representative.

I have also relied on my experience as a life insurance company employee; this experience includes numerous positions in the following areas:  annuity and life insurance new business processing, actuarial, compliance, qualified plans, marketing, and sales.  My actuarial experience included filing life insurance products for sale approval with state insurance departments.  My qualified plans experience included marketing and administration of money purchase and profit sharing plans.  My compliance experience included obtaining certificates of authority from state insurance departments so that the insurance company could sell insurance products in the respective states.

More specifically, I have relied upon my knowledge and experience in:

1) the selection and sales of life insurance products and annuity contracts as a life insurance agent;

2) the servicing of life insurance products and annuity contracts as a life insurance agent;

3) providing life insurance analysis and life insurance advisory services (as a licensed life and disability insurance analyst) to insureds, life insurance policy owners, life insurance beneficiaries, power of attorney holders, trustees, estates, and life insurance agents;

4) my professional involvement (as a life insurance agent, a securities registered representative, a life and disability insurance analysis, an insurance company employee, a CERTIFIED FINANCIAL PLANNER™ practitioner, and an enrolled agent) in scenarios involving the use of life insurance in business planning,

tax planning, retirement planning, estate planning, charitable planning, pension plans, employee benefit plans, and other complex planning and life insurance matters;

5) the marketing of life insurance products to life insurance agents and securities registered representatives as an insurance company representative and external wholesaler;

6) the training, education, and licensing of securities registered representatives;

7) the training, education, and licensing of life insurance agents;

8) the process of becoming appointed by an insurance company to act as an agent for the insurance company;

9) the process of becoming registered as a securities representative with a broker dealer;

10) life insurance company processing of life insurance applications and premium payments; and

11) life insurance company issuance and delivery of life insurance policies.

In forming my opinions, I have considered the following items and documents:

1) The Hawaii Insurance Code.

2) FINRA Rules.

3) NASD (National Association of Securities Dealers) Rules.

4) Life insurance industry standards.

5) Securities industry standards.

6) Gary Marks' website, www.rockingwallstreet.com.

7) United Planners' website, www.unitedplanners.com.

8) Report with exhibits of Plaintiffs' Expert Scott J. Witt, FSA, MAAA, dated October 7, 2009.

9) Report with attachment of Plaintiffs' Expert Stephen C. Burgess, dated October 7, 2009.

10) Plaintiffs' Complaint with exhibits.

11) Deposition of Douglas Hall dated April 3, 2009.

12) Deposition of Steven Story with exhibits, dated September 16, 2009.

13) Deposition of Gary Marks with exhibits, dated September 17, 2009.

14) Status Information as of October 28, 2009 for the Lincoln National life insurance policy.

15) United Planners' Compliance Manual.

16) Agent licensing information about Mr. Story from the Hawaii Insurance Division website, http://hawaii.gov/dcca/areas/ins.

17) Securities licensing information about Mr. Story from the FINRA website, www.finra.org.

## SECTION 4: EXHIBITS TO BE USED

See Section 3, above, which is incorporated herein by this reference. My investigation and study of the issues presented in this case is continuing. I reserve the right to supplement the list of exhibits to be used in connection with my testimony in order to present a full and complete explanation of my opinions, and to consider and rely upon (and attach as exhibits) such additional evidence, documents and testimony as may be relevant to my study and testimony.

## SECTION 5: EXPERT QUALIFICATIONS, INCLUDING LIST
## OF PUBLICATIONS AUTHORED WITHIN PRECEDING TEN YEARS

I have twenty-one years of extensive financial services experience in the areas of life insurance, annuity contracts, financial planning and analysis, and taxation. I hold numerous insurance licenses, including the life and disability insurance analyst license, the life agent/life-only agent license, the life agent/accident and health agent license, and the fire and casualty broker-agent license. The life and disability insurance analyst license allows me to interpret the rights of any party to a life insurance, annuity, or disability insurance contract; provide advice on matters concerning such contracts; and charge a fee for such services. I previously held Series 7,

Series 6, and Series 63 Securities Licenses.

I am a CERTIFIED FINANCIAL PLANNER™ practitioner. I am also licensed as an Enrolled Agent through the United States Department of the Treasury. I have served as an Examination Content Specialist, an Examination Question Reviewer, and a Disciplinary Hearings Member for the Certified Financial Planner Board of Standards, Inc. I have also served as a volunteer Focus Group Participant for the Internal Revenue Service.

I have served as an Expert Witness in federal courts, state courts, and arbitration venues throughout the United States. A full, true, and correct copy of my *Curriculum Vitae* dated June 2009 is attached hereto as Exhibit 1. I have authored no published articles or publications within the past 10 years.

## SECTION 6: COMPENSATION TO BE PAID FOR STUDY AND TESTIMONY IN THIS MATTER

My hourly rate for testimony at trial and deposition is $300.00. My hourly rate for work other than testimony at trial and deposition is $250.00. I also require reimbursement of direct expenses incurred on behalf of my study and testimony.

## SECTION 7: OTHER CASES IN WHICH WITNESS HAS TESTIFIED AS AN EXPERT AT TRIAL OR DEPOSITION WITHIN THE PRECEDING FOUR YEARS

The cases in which I have testified as an Expert at trial or deposition within the preceding four years are as follows:

## Deposition Testimony as Expert

Date:              March 3, 2005
Litigation:        Ernst Hammermueller v. North American Company for Life and Health
                   Insurance, et al.
Court:             Superior Court of the State of California, County of Riverside

## Deposition Testimony as Expert

Date:              March 24, 2005
Litigation:        Ernst Hammermueller v. North American Company for Life and Health
                   Insurance, et al.
Court:             Superior Court of the State of California, County of Riverside

## Trial Testimony as Expert

Date:              June 5, 2006
Litigation:        Ernst Hammermueller v. North American Company for Life and Health
                   Insurance, et al., Case Number INC 037361
Court:             Superior Court of the State of California, County of Riverside
Court Location:    Indio, California

## Written Report in Lieu of Testimony

Date:              June 28, 2006
Litigation:        Stanley Moore v. Kathleen Moore
Court:             Superior Court of the State of California, County of Contra Costa

**Deposition Testimony as Expert**

Date:              June 6, 2007

Litigation:        Romulo Paulino and Virginia Paulino v. National Western Life Insurance
                   Company, et al.

Court:             Superior Court of the State of California, County of Los Angeles


**Deposition Testimony as Expert**

Date:              September 20, 2007

Litigation:        Alejandra Gomez Cantu v. Jackson National Life Insurance Company, et al.

Court:             United States District Court, Southern District of Texas, McAllen Division


**Deposition Testimony as Expert**

Date:              April 24, 2008

Litigation:        Judy Balint v. Daniel Neumann, et al.

Court:             Superior Court of the State of California, County of San Mateo


**Written Report in Lieu of Deposition Testimony as Expert**

Date:              March 24, 2009

Arbitration:       Ann Schmidt v. Steven A. Rose, et al.

Court for Discovery-Related Issues:  Dauphin County Court of Common Pleas,
                   Commonwealth of Pennsylvania

**<u>Written Report in Lieu of Deposition Testimony as Expert</u>**

Date:                          March 25, 2009

Arbitration:                 Ann Schmidt v. Steven A. Rose, et al.

Court for Discovery-Related Issues:  Dauphin County Court of Common Pleas,
                                Commonwealth of Pennsylvania

**<u>Deposition Testimony as Expert</u>**

Date:                          April 17, 2009

Litigation:                   W.O. Lloyd Farms, LLC, et al. v. Massachusetts Mutual Life Insurance
                                Company, et al.

Court:                        Circuit Court of Jefferson County, West Virginia

**<u>Currently-Scheduled Deposition Testimony as Expert</u>**

Scheduled Date:         December 1, 2009

Litigation:                   J&M Associates, Inc., v. Mark C. Callahan, d/b/a/ Callahan Financial
                                Solutions; et  al.

Court:                        United States District Court, Southern District of Alabama, Southern
                                Division

All opinions expressed and conclusions reached in this report are offered within a
reasonable degree of professional certainty.

DATED:   November 20, 2009

**MARY RAE FOUTS, EA, CFP®**

California Insurance License # 0C24544
CFP Board ID # 68393
United States Dept. of the Treasury Enrollment # 2007-76716

**EXHIBIT 1**

*Curriculum Vitae* **for Mary Rae Fouts, EA, CFP®**

CONTACT INFORMATION: **Mary Rae Fouts, EA, CFP®**

| | |
|---|---|
| **Office Phone:** | (925) 979-9972 |
| **Office Fax:** | (925) 979-9970 |
| **Cellular Phone:** | (510) 421-5457 |
| **Address:** | Fouts Financial Group, 1547 Palos Verdes Mall #407, Walnut Creek, California 94597 |
| **E-mail:** | mary@foutsfinancialgroup.com |
| **Website:** | www.foutsfinancialgroup.com |

PROFESSIONAL PROFILE

Ms. Fouts has impeccable professional credentials and twenty-one years of extensive financial services experience. She has Expert Witness experience in federal courts, state courts, and arbitration venues.

Ms. Fouts is one of the select few Life and Disability Insurance Analysts licensed by the California Department of Insurance. A licensed Life and Disability Insurance Analyst can interpret the rights of any party to a life insurance, annuity, or disability insurance contract; provide advice on matters concerning such contracts; and charge a fee for such services. Ms. Fouts also holds Life Agent - Life-Only Agent, Life Agent - Accident and Health Agent, and Fire and Casualty Broker-Agent insurance licenses. As a CERTIFIED FINANCIAL PLANNER™ practitioner and an Enrolled Agent, Ms. Fouts has met the rigorous certification and licensing requirements of the Certified Financial Planner Board of Standards, Inc. and the United States Department of the Treasury.

Ms. Fouts has accomplished analytical skills; she emphasizes working with technical and complex subject matter. Ms. Fouts is well versed in written and oral communication, including group presentations.

PROFESSIONAL EXPERIENCE

**Fouts Financial Group: Sole Practitioner, 1999 - Present**

Ms. Fouts provides a group of Expert Witness and Advisory Services addressing client concerns involving insurance, annuity, financial planning, tax, and related matters. These services include:

- **Expert Witness Services** for litigation and arbitration involving life insurance, annuity contracts, elder financial abuse, §412(i) and §412(e)(3) defined benefit plans, §419 welfare benefit plans, financial planning, tax planning, and commercial insurance matters.

- **Life Insurance Advisory Services**, providing life insurance policy analysis, risk analysis, purchase recommendations, planning recommendations, policy appraisals, and other services for insureds, policy owners, and beneficiaries.

- **Annuity Advisory Services**, providing annuity contract analysis, purchase recommendations, planning recommendations, contract appraisals, and other services for annuitants, contract owners, and beneficiaries.

- **§412(i) and §412(e)(3) Defined Benefit Plan Matters and §419 Welfare Benefit Plan Matters**, providing Advisory Services to business owners and plan participants, and Expert Witness Services for litigation matters.

- **Financial Planning Services**, providing Advisory Services for financial planning matters.

- **Tax Services**, providing tax planning, preparation, and representation services.

- **Commercial Insurance Advisory Services**, providing insurance policy analysis, risk analysis, coverage recommendations, and other services for insureds and policy owners.

**KMS Financial Services, Inc: Branch Office, 1999 - 2003**

Ms. Fouts provided investment advisory, retirement planning, and financial planning services through KMS Financial Services, Inc., a Registered Investment Advisor.

*CV page 1 of 2; June 2009*

**EXHIBIT 1**

*Curriculum Vitae* **for Mary Rae Fouts, EA, CFP®**

**PROFESSIONAL EXPERIENCE, CONTINUED**

**Transamerica Life Insurance and Annuity Company: 1998 - 1999**
**CNA Life Insurance Company: 1997 - 1998**
**Ameritas Variable Life Insurance Company: 1994 - 1997**

Ms. Fouts was an External Wholesaler. Territories included Northern California, Northern Nevada, Oregon, Washington, Idaho, Utah, and Alaska. Marketed variable annuity and variable life insurance products to independent registered representatives affiliated with national and regional broker dealers. Provided training and continuing education seminars to insurance agents and securities registered representatives. Provided technical assistance with complex sales techniques.

**Lincoln Benefit Life Company: 1988 - 1994**

Ms. Fouts held numerous positions in actuarial, new business, and qualified plans departments. Served as New Business Analyst and New Business Representative, addressing the processing and issuance of annuity applications, life insurance applications, and premium payments. Held Analyst and Staff Assistant positions, providing compliance analysis, systems analysis, and retirement plan administration.

**PROFESSIONAL LICENSES AND CERTIFICATIONS**

- Life and Disability Insurance Analyst: California Insurance Licensee
- CERTIFIED FINANCIAL PLANNER™ Certification: Certified Financial Planner Board of Standards, Inc.
- Enrolled Agent: United States Department of the Treasury Licensee
- Life Agent - Life-Only Agent: California Insurance Licensee
- Life Agent - Accident and Health Agent: California Insurance Licensee
- Fire and Casualty Broker-Agent: California Insurance Licensee
- Ms. Fouts formerly held Series 7, Series 6, and Series 63 Securities Licenses.

**EDUCATION**

- Continuing Professional Education, as required by professional licenses and certifications.
- The American College; Bryn Mawr, Pennsylvania (2000)
        Certified Financial Planner Curriculum
- The University of Nebraska-Lincoln, Bachelor of Arts (1985 - 1987)
        Major: Economics
        Minors: Mathematics, Spanish, English, and History
- Loyola University of Chicago (1984 - 1985)

**PROFESSIONAL CONTRIBUTIONS**

Ms. Fouts serves as a Focus Group Participant for the Internal Revenue Service. Ms. Fouts has also served as an Examination Content Specialist, an Examination Question Reviewer, and a Disciplinary Hearings Member for the Certified Financial Planner Board of Standards, Inc.

**INTERESTS AND LEISURE ACTIVITIES**

Ms. Fouts is an avid long distance runner. She collects Disney memorabilia and is particularly fond of the loveable donkey Eeyore. Ms. Fouts enjoys reading, collecting wine, cooking and baking, gardening, birdwatching, and exploring California on motorcycle excursions.

*CV page 2 of 2; June 2009*